ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPCECIAL

| | | |
|---|---|---|
| **GIL ROSARIO RIVERA**<br><br>Recurrido<br><br>v.<br><br>**MUNICIPIO DE SAN JUAN**<br><br>Recurrente | KLRA202300597 | **REVISIÓN** procedente de la **Comisión Apelativa del Servicio Público**<br><br>Caso Núm.:<br>**2008-10-0377**<br><br>Materia:<br>Retención |

Panel integrado por su presidente el Juez Monge Gómez, el Juez Cruz Hiraldo y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de abril de 2024.

Mediante recurso de revisión administrativa comparece ante nos el Municipio de San Juan, (Municipio o la parte recurrente). Nos solicita la revocación de la determinación emitida por la Comisión Apelativa del Servicio Público (CASP). Mediante el aludido dictamen, la CASP concedió la apelación instada por el Sr. Gil Rosario Rivera (señor Rosario o recurrido) contra el Municipio y ordenó su reinstalación, así como el pago de los salarios y beneficios marginales dejados de percibir.

Tras un análisis concienzudo de la totalidad del expediente y con el beneficio de la transcripción de la prueba oral que desfiló en la vista celebrada ante la CASP, resolvemos confirmar el dictamen recurrido.

**I.**

El Sr. Gil Rosario Rivera era empleado de carrera del Municipio de San Juan desde el 1990. Se desempeñaba como operador de equipo pesado en la Oficina para el Desarrollo Infantil del Municipio de San Juan. Al momento de su destitución había

laborado por espacio de dieciocho (18) años en el Municipio, nueve (9) de ellos, estuvo asignado al programa "Head Start". Su función principal era transportar a los niños del programa a diversas actividades y diligencias encomendadas por su supervisor, el Sr. Jesús Pastrana Martínez.

La presente controversia tiene su génesis el 3 de octubre de 2008 cuando el señor Gil Rosario presentó una Apelación ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH)[1], por estar inconforme con la determinación del Municipio de destituirle del puesto que ocupaba en la clase de Chofer de Vehículo Pesado. El recurrido recibió el 15 de septiembre de 2008 una notificación por parte del Municipio en el que se le informaba que habían acogido la recomendación de la Oficial Examinadora, Lcda. Rita I. Maldonado Arrigoitía, luego de evaluada la prueba presentada durante la vista administrativa.

La medida disciplinaria surge de los hechos ocurridos el día 1 de octubre de 2007, en el que se le requirió tanto al recurrido como a otros empleados, ir a un almacén por necesidad de servicio, pero estos alegadamente se negaron, lo que constituyó para el Municipio un acto de insubordinación. A su vez, el recurrente incluyó otra falta que sumó a la determinación de destitución, sobre hechos ocurridos el día 28 de septiembre de 2007, en el que se le imputó al señor Rosario haber realizado en el banco un cambio de cheque de su quincena, mientras utilizaba un vehículo oficial y en horario laborable. En dicha misiva el Municipio adujo que el empleado también contaba con dos (2) medidas disciplinarias adicionales, específicamente una comunicación del 19 de junio de 2007, por

---

[1] La Comisión Apelativa del Servicio Público fue creada mediante el Plan de Reorganización Núm. 2-2010 en el que se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).

insubordinación y ausentismo y una comunicación de 23 de enero de 2008, en el que se le había suspendido de empleo y sueldo por treinta (30) días por alegada conducta similar.

El Municipio basó la destitución conforme el Capítulo VII, Artículo 7.09, Sección 9.1 (4), Retención del Servicio del Código de Administración de Asuntos de Personal del Municipio de San Juan y el Artículo 11.011 (a) (4) de la Ley Núm. 81 del 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos, que establecen como deberes y obligaciones de un empleado:

**"Acatar aquellas órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada a éstos y con las funciones, actividades y operaciones municipales."**

A su vez, el Municipio concluyó que dichas conductas eran sancionables por violación a las disposiciones del Reglamento de Conducta y Medidas Disciplinarias, las cuales conllevaban las siguientes penalidades:

> Normas de Conductas Prohibidas Número 1, inciso h:
> ***"Negarse, sin mediar justa causa, a realizar un trabajo."***
> Violentar la disposición de insubordinación por **tercera ocasión** conlleva la destitución del puesto que ocupa el Municipio de San Juan.
> Normas de Conductas Prohibidas Número 12
> ***"Disponer de la propiedad municipal y los servicios de un empleado para fines no públicos."***

Violentar dicha disposición conlleva la suspensión de empleo y sueldo por **10 días laborables** del puesto que ocupa en el Municipio de San Juan.

En su Apelación el señor Rosario se sostuvo en no haber incurrido en conducta constitutiva de insubordinación y en cuanto al cambio de cheque de su nómina, respondió que fue autorizado y era costumbre de los empleados realizarlo.

Atendido el escrito de Apelación radicado por el señor Rosario, la CASP celebró una vista el día 27 de abril de 2022. Antes de presentar la prueba testifical ante la Oficial Examinadora, las partes informaron haber estipulado la autenticidad de la siguiente prueba documental:

1. Exhibit 1: *Carta* del 7 de julio de 2008 y recibida por el apelante el 15 de septiembre de 2008. La carta está suscrita por el secretario municipal y en ella se le destituye del puesto, conforme a la recomendación de la [O]ficial [E]xaminadora en el informe del 23 de mayo de 2008.
2. Exhibit 2: *Informe de la Oficial Examinadora* del 23 de mayo de 2008 en el que se encontraron probadas las faltas 1 y 12. El informe concluye que el señor Rosario Rivera había recibido medidas disciplinarias progresivas con relación a la falta por lo que recomendó la destitución del apelante.
3. Exhibit 3: *Carta* del 1 de noviembre de 2007 suscrita por el director de la Oficina de Administración de Recursos Humanos y Relaciones Laborables y recibida por el Sr. Gil Rosario Rivera el 28 de noviembre de 2007. En ella se le informó la intención del MSJ de destituirle por incurrir en las faltas 1 y 12 del Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan.
4. Exhibit 4: Formulario de *Solicitud de Acción Disciplinaria* firmada por el Sr. Jesús Pastrana Martínez, supervisor del apelante el 30 de octubre de 2007, relacionada a los hechos del 28 de septiembre de 2007 cuando este último fue al banco a cambiar el cheque de pago salarial.
5. Exhibit 5: *Carta* del apelante con fecha de 28 de agosto de 2007 explicando el incidente que provocó la controversia relacionada al cambio de cheque.
6. Exhibit 6: Formulario del Municipio intitulado *Recibo.* Este fue firmado por el apelante acusando recibo de la Ordenanza Núm. 30 del 30 de agosto de 2007.
7. Exhibit 7: Formulario intitulado *Certificación.* En ella se da fe de la entrega al señor Rosario Rivera de la Ordenanza Núm. 30 del 7 de mayo de 2007, así como de otras normas y reglamentos relacionados al personal.
8. Exhibit 8: Formulario de *Solicitud de Acción Disciplinaria* firmado por el Sr. Jesús Pastrana Martínez y comentado por el apelante, por los hechos del 1 de octubre de 2007 en los que se le requirió prestar servicios en el almacén. La solicitud tiene fecha del 30 de octubre de 2007.
9. Exhibit 9: *Carta* del 23 de enero de 2008 y recibida por el Sr. Gil Rosario Rivera el 3 de marzo de 2008. La carta está suscrita por el secretario municipal y en ella se le impone al apelante una suspensión de empleo y sueldo por 30 días, conforme a la recomendación de la [O]ficial [E]xaminadora en el informe del 29 de diciembre de 2007.

10.  Exhibit 10: Informe de la Oficial Examinadora del 29 de diciembre de 2007 en el que se encontraron probadas las faltas 2 y 57 y recomendó la imposición de una medida disciplinaria consistente en la suspensión de empleo y sueldo por 30 días.

11.  Exhibit 11: *Carta* del 28 de agosto de 2007, suscrita por el Director de la Oficina de Administración de Recursos Humanos y Relaciones Laborales y recibida por el apelante el 18 de septiembre de 2007. En ella se le informa la intención del MSJ de imponerle una medida disciplinaria de 45 días por incurrir en las faltas 2, 55 y 57 del Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan.

12.  *Carta* del 19 de junio de 2007, suscrita por el secretario municipal y recibida por el apelante el 18 de julio de 2007, en la que se le impone una reprimenda escrita por cometer las faltas 2 y 57 del Reglamento de Conductas y Medidas Disciplinarias del Municipio de San Juan.

Con el beneficio de los escritos de las partes, la Oficial Examinadora hizo las siguientes determinaciones de hechos pertinentes:

5. El 19 de junio de 2007, el Municipio le remitió a Rosario Rivera una reprimenda escrita por incurrir en la Falta de Conducta Número 2 y en la Falta de Conducta Número 57 del Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan por un patrón de ausencias, tardanzas y abandono del lugar de trabajo sin previa autorización. Dicha medida disciplinaria fue recibida por el apelante el 18 de julio de 2007.

6. Posteriormente, específicamente el 29 de agosto de 2007, el [Municipio] le notificó por escrito al Sr. Gil Rosario Rivera su intención de imponerle una nueva medida disciplinaria consistente en una suspensión de empleo y sueldo por 45 días por nuevamente infringir las normas de conducta, imputándole la reincidencia en la Falta de Conducta Número 2, y la Falta de Conducta Número 57, e imputándole además la Falta de Conducta Número 55. Se alegó en la carta que el apelante continuó con el patrón de patrón de ausencias, tardanzas y abandono del lugar de trabajo sin previa autorización. Esta comunicación fue recibida por el apelante el 18 de septiembre de 2007. En ella se le apercibió sobre su derecho a solicitar vista administrativa.

12.  Por [los hechos ocurridos el 28 de septiembre de 2007], el 30 de octubre de 2007, el Sr. Jesús Pastrana Martínez refirió a la Oficina de Recursos Humanos una *Solicitud de Acción Disciplinaria* contra el Sr. Gil Rosario Rivera. En ella consignó lo siguiente:

Orientar al Chofer Gil Rosario que no se puede utilizar los vehículos [del] Municipio de SJ para otras funciones que no sean del Programa de

HS. No autoricé el uso del vehículo para otras funciones.

13.     Sobre esta alegación, en el mismo formulario *Solicitud de Acción Disciplinaria,* el apelante arguyó lo siguiente:

Recibí de mi supervisor el mismo día de la citación y pensaba que no había problemas ya que todos los choferes lo hacen. Por tal razón me paré a cambiar mi cheque y proseguí con mi trabajo.

14.     El 1 de octubre de 2007, el Sr. Nelson Rosa Cabán les requirió al apelante y a otros empleados que se presentaran en un almacén, propiedad del Municipio, ubicado en Hato Rey.

15.     Estos informaron al supervisor su inconformidad con acudir al lugar por entender que realizarían funciones que no respondían al puesto que ocupaban.

18.     El señor Rosario Rivera […] sostuvo lo siguiente:

Le indiqué a mi supervisor que si tenía que ir al almacén iba a brindar servicios de guiar no hacer trabajo de guardalmacén ya que no está en mis funciones.

19.     Por estos dos últimos sucesos, [el Municipio] le informó al apelante su intención de destituirle del puesto imputándole la comisión de las normas de conductas prohibidas número 1, inciso h y número 12.

20.     En cuanto a la medida disciplinaria de suspensión de empleo y sueldo, la vista informal en el MSJ se celebró el 3 de diciembre de 2007 y la [O]ficial [E]xaminadora a cargo de la vista emitió su *Informe y Recomendación* el 19 de diciembre de 2007. Esta última encontró probadas las faltas 2 y 57, no así la 55. Por tratarse de la segunda vez que se le imputan las mismas faltas, recomendó la suspensión de empleo y sueldo por 30 días.

22.     Sobre los hechos imputados al apelante, y sobre los que se le informó la intención de destituirle, se celebró una vista informal en el Municipio de San Juan el 31 de marzo de 2008. La [O]ficial [E]xaminadora a cargo emitió su informe el 23 de mayo de 2008 recomendando la destitución por encontrar probadas las faltas que se le imputaron y por entender que reincidía la comisión de la falta número 1.

23.     Nuevamente, el Municipio acogió la recomendación de la [O]ficial [E]xaminadora y procedió con la destitución del apelante. Esta determinación final le fue notificada al Sr. Gil Rosario Rivera en carta del 7 de julio de 2008 y recibida por este el 15 de septiembre de 2008. En ella se le apercibió de su derecho a apelar dicha determinación ante [la CASP].

Aquilatada la prueba testifical y documental, el caso fue sometido para adjudicación. La Oficial Examinadora emitió su Informe, el que fue acogido por la CASP mediante *Resolución* del 19

de septiembre de 2023. En este la Oficial Examinadora concluyó que el Municipio incumplió con las exigencias de ley para destituir al Sr. Rosario. Señaló que el Municipio sostuvo que al apelante se le ordenó asistir a realizar trabajos en el Almacén Central y que este se negó. El Municipio adujo que esta constituía la tercera vez en que el Sr. Rosario incurría en la misma conducta prohibida. "Sin embargo, de la prueba desfilada surge que el [Sr. Rosario] estuvo disponible para realizar trabajos realizados al puesto ocupado". Para demostrar que el Sr. Rosario incumplió con los deberes de su puesto, "**el Municipio intentó presentar la descripción del puesto que cobró vigencia en el 2021 y no la vigente al momento de los hechos**. **Tampoco presentó otra prueba que pudiera permitirnos colegir que dicha función era propia del puesto que ocupaba** [el Sr. Rosario] o afín a este". (Énfasis nuestro).

Por lo tanto, recomendó la modificación de la medida disciplinaria impuesta de una destitución a una suspensión de empleo y sueldo por diez (10) días; a su vez, se ordenó la restitución del Sr. Gil Rosario Rivera en un puesto igual o similar al que ocupaba al momento de la destitución; el abono de los emolumentos dejados de percibir por el tiempo que estuvo fuera del empleo; y la remoción de cualquier alusión a su destitución del expediente de personal, ordenando sustituir dicha medida disciplinaria por una suspensión de empleo y sueldo de diez (10), conforme lo establecen las Guías.

Inconforme, el Municipio comparece ante nos mediante el presente recurso de revisión administrativa, en el que invoca la comisión de los siguientes errores:

1. **ERRÓ LA CASP EN DECLARAR HA LUGAR LA APELACION DEL RECURRIDO.**
2. **ERRÓ LA CASP EN LA EXCLUSION DE PRUEBA ADMISIBLE Y PERTINENTE PRESENTADA POR LA PARTE RECURRENTE CUANDO EL PROPIO RECURRIDO LO AUTENTICA EN SU TESTIMONIO.**

3. **ERRÓ LA CASP AL CONCLUIR QUE LA ESPECIFICACIÓN DE CLASE DE CHOFER DE EQUIPO PESADO PRESENTADA POR LA PARTE RECURRENTE ENTRÓ EN VIGOR EN EL AÑO 2021.**
4. **ERRÓ LA CASP EN DILATAR EL CASO POR MÁS DE 14 AÑOS[.]**

Atendido el recurso y con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver, primero delimitando el trasfondo normativo aplicable.

**II.**

**A.**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) en su sección 4.2 rige y define el ámbito de la revisión judicial de las decisiones de las agencias administrativas. A tales efectos, el estatuto limita la revisión judicial a decisiones que: (1) sean órdenes o resoluciones finales de la agencia y (2) que se hayan agotado todos los remedios provistos por la agencia administrativa. 3 LPRA sec. 9672.

Sobre esta gestión de revisión judicial, sabido es que los tribunales apelativos vienen llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117,126 (2019); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Esta deferencia responde a la experiencia y pericia que se presume tienen los organismos administrativos para atender y resolver los asuntos por ley delegados. *Id.* Lo anterior, sin embargo, no pretende imprimirle un sello de corrección a aquellas determinaciones o interpretaciones administrativas irrazonables, ilegales o simplemente contrarias a derecho. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012). Es por ello, que las determinaciones de una agencia han de ser evaluadas bajo un estándar de razonabilidad. *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *Rebollo v. Yiyi Motors*, 161 DPR 69, 76 (2004). Así pues, las determinaciones de hecho de las decisiones

administrativas se sostendrán por los tribunales si estas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018); *Puerto Rico Telephone Co. V. Junta Reglamentadora de Telecomunicaciones de Puerto Rico,* 151 DPR 269, 281 (2000). De otra parte, y sobre las determinaciones de hecho emitidas por los organismos administrativos, al cumplir con la tarea de la revisión judicial, debe auscultarse si tales determinaciones están basadas en evidencia sustancial considerando la totalidad del expediente administrativo. 3 LPRA sec. 9675.

Evidencia sustancial es "aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión." *Graciani Rodríguez y otros v. Garage Isla Verde y otros, supra*, a la pág. 127. Por su parte, el expediente o récord administrativo constituye la base exclusiva tanto para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial. 3 LPRA sec. 9658. Esto incluye, la evidencia recibida o considerada por la agencia, aquellos ofrecimientos de prueba y las objeciones a los mismos y la prueba oral recibida en la vista administrativa. *Id.*

Ahora bien, nuestro ordenamiento jurídico reconoce que, aunque los foros administrativos pueden ejercer funciones adjudicativas, este proceso se debe realizar conforme con el alcance de la cláusula constitucional del debido proceso de ley. J.A. Echevarría Vargas, *Derecho administrativo puertorriqueño,* 5ª ed. rev., Puerto Rico, Ed. SITUM, 2023, pág. 176. Por lo tanto, la LPAU, *supra*, reconoce que en los procesos adjudicativos, se conservaran los siguientes derechos:

(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
(B) **Derecho a presentar evidencia.**
(C) Derecho a una adjudicación imparcial.

(D) Derecho a que la decisión sea basada en el expediente. *Íd.*, Sec. 3.1. (Énfasis nuestro).
Nuestro Tribunal Supremo ha resuelto que:

Una parte en un procedimiento formal de adjudicación a nivel administrativo **puede presentar evidencia tanto oral como documental en apoyo de sus contenciones**. Al ser la audiencia concedida por las agencias de carácter evidenciario, se sigue la trayectoria judicial de que cada parte presente su caso a través de testimonio oral, evidencia documental y argumentos legales. ***El derecho a la audiencia incluye el de presentar evidencia.*** Un procedimiento que no permite la presentación de prueba para demostrar la falta de responsabilidad *no* cumple con los requisitos del debido procedimiento de ley y constituye una mera formalidad. *Félix v. Las Haciendas,* 165 DPR 832, 849 (2005). (Énfasis nuestro).

Aunque exista un derecho a presentar evidencia, no podemos olvidar que las Reglas de Evidencia, 32 LPRA Ap. VI, R. 101 *et seq.*, no aplican en procedimientos administrativos. La Sección 3.13(e) de la LPAU, *supra,* dispone que "[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, **pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento**". (Énfasis nuestro). "La ausencia de aplicar las Reglas de Evidencia a los procesos administrativos persigue el objetivo de 'evitar las trabas procesales de los tribunales de justicia' y propiciar que éstos se realicen con agilidad y sencillez". J.A. Echevarría Vargas, *op. cit.*, pág. 228 (citando a *Martínez v. Tribunal Superior,* 83 DPR 717, 720 (1961)). En consecuencia, los juzgadores al nivel administrativo tienen la responsabilidad de dirimir los conflictos de prueba con el propósito de conocer los hechos necesarios para resolver la controversia. Esto, sin embargo, no quiere decir ni implica que los foros administrativos están impedidos categóricamente de la aplicación de las Reglas de Evidencia. La discreción del foro administrativo al aplicar las Reglas de Evidencia debe estar fundamentada sobre una base racional. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P.,* 146 DPR 64 (1998).

En lo pertinente al caso de marras, la Regla 901 de Evidencia, *supra*, dispone que "[e]l requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". Esto es, no se puede introducir un documento sin antes autenticar tanto el documento como su contenido. Este requisito se cumple sentando las bases de la autenticación bajo los principios de las Reglas 109(B) y 901 de Evidencia, salvo que exista una de las excepciones que dispone la Regla 902 de Evidencia. R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, 4ª ed. rev., Puerto Rico, Ed. SITUM, 2015, pág. 569.

Debido a la presunción de corrección de las determinaciones de hechos elaboradas por las agencias, el Tribunal Supremo de Puerto Rico ha resuelto que estas deben ser respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. *Otero v. Toyota, supra*, pág. 728. Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, de manera que no pueda concluirse que la determinación administrativa fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración. *Graciani Rodríguez v. Garaje Isla Verde, supra*, citando a *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006) y otros casos allí citados.

Por su parte, las conclusiones de derecho de las agencias administrativas sí pueden ser revisadas en su totalidad. Ello, sin embargo, no implica que podamos descartar libremente las conclusiones e interpretaciones de las agencias y sustituirlas por las nuestras. *Otero v. Toyota, supra.*

**B.**

La Comisión Apelativa del Servicio Público fue creada mediante el Plan de Reorganización Núm. 2-2010 en el que se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP). CASP es un organismo administrativo cuasi-judicial especializado en el que se atienden casos laborales, de administración de recursos humanos y querellas, tanto al amparo de la Ley de Relaciones del Trabajo del Servicio Público, 3 LPRA sec. 1451, *et seq.*, como la Ley para la administración de los Recursos Humanos del Servicio Público, 3 LPRA Ap. XIII, Art. 4.

CASP tiene jurisdicción exclusiva, entre otras cosas, para atender las apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios cuando: un empleado no cubierto por la Ley de Relaciones del Trabajo del Servicio Público, *supra*, alegue que una acción o decisión le afecta o viola cualquier derecho concedido por la Ley de Municipios Autónomos, los reglamentos que se aprueben en virtud de estas leyes o aquellos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable. Art. 12 del Plan de Reorganización Núm. 2-2010.

**C.**

La destitución de un empleado o empleada del servicio público es un castigo extremo que sólo procede ante conducta y actuaciones de eminente gravedad. *Cruz Rivera v. Municipio de Guaynabo,* 2020 TSPR 125, (Sentencia); *Rodríguez v. Tribunal Superior*, 101 DPR 151, 168 (1973). Como norma general, las primeras ofensas no ameritarán la destitución, la que procederá cuando la falta o acto sea de tal seriedad o naturaleza que revele una actitud o un detalle de carácter tan lesivo a la paz y buen orden que constituiría

imprudencia esperar para separar al empleado del establecimiento. *Id*, citando a *Srio. Del Trabajo v. I.T.T.*, 108 DPR 536,544 (1979).

La Ley Núm. 81-1991, mejor conocida como Ley de Municipios Autónomos de Puerto Rico, 21 LPRA sec. 4001, *et seq.*,[2] autoriza a los municipios a establecer las medidas disciplinarias necesarias para salvaguardar el buen orden y la sana administración pública. A tales efectos, el Artículo 11.012 de la Ley 81-1991, dispone que podrá destituirse o suspender de empleo y sueldo a cualquier empleado, por justa causa, y previa formulación de cargos por escrito y advertencia de su derecho a una vista informal. La notificación de formulación de cargos deberá tener una relación de los hechos que sostienen la acción disciplinaria y las leyes, ordenanzas, reglas o normas que han sido violentadas por el empleado. Además, se le informará sobre su derecho a una vista administrativa informal. 3 LPRA sec. 4562.

El Municipio de San Juan, mediante el Anejo B del Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan, Ordenanza Núm. 30, Serie 2006-2007 (Reglamento), establece un sistema de disciplina progresiva al momento de disciplinar a un empleado municipal por conducta contraria a las normas de su empleo. Salvo situaciones no pertinentes al caso de marras, la destitución del puesto requiere que el empleado haya incurrido en una serie de violaciones e infracciones a sus deberes y responsabilidades. Bajo este sistema de disciplina progresiva, el empleado estará sujeto a diferentes tipos de sanciones dependiendo de la frecuencia de la infracción. Estas violaciones deben ser notificadas por el Municipio, por lo que no constituye una violación la falta no notificada ni procesada como dispone el Reglamento.

---

[2] Mediante la aprobación de la Ley 107 de 14 de agosto de 2020 se creó el Código Municipal que deroga la Ley de Municipios Autónomos. No obstante, la legislación vigente y aplicable, a la fecha de los hechos pertinentes a nuestra controversia, es la Ley 81-1991.

*Feliciano Martes v. Sheraton,* 182 DPR 368 (2011); *Secretario del Trabajo v. I.T.T.,* 108 DPR 536 (1979). Por lo tanto, es imperativo que para que proceda la destitución de un empleado, el Municipio cumpla a cabalidad con su Reglamento y con el sistema de disciplina progresiva que éste creó.

**III.**

El Municipio señaló cuatro (4) errores por parte de la CASP que estaremos atendiendo conjuntamente por estar íntimamente relacionados. Como indicáramos anteriormente, el Municipio comparece mediante el presente recurso para sostener que la CASP se equivocó al evaluar la prueba presentada durante la vista administrativa y, por consiguiente, en considerar ilegal la destitución del señor Rosario.

A tales efectos, arguyó el Municipio que la CASP erró al excluir prueba admisible, cuando el señor Rosario lo autenticó en su testimonio y al concluir que la especificación de clase de chofer de quipo pesado presentada por el Municipio entró en vigor en el año 2021. No le asiste la razón. Como hemos señalado, aunque las Reglas de Evidencia no aplican en los procesos administrativos, si son de aplicación los principios fundamentales de estas para lograr una solución rápida, justa y económica del procedimiento. También hemos destacado que los juzgadores al nivel administrativo gozan de amplia discreción al tomar decisiones sobre el manejo del caso y durante la celebración de vistas. Solo podremos sustituir nuestro criterio por el criterio administrativo si no encontramos base racional alguna para justificarlos.

Ante los reclamos del Municipio para la admisión del documento detallando las responsabilidades del puesto del Sr. Rosario, no consideramos que la no admisión fue irrazonable, arbitraria o que esta carezca de fundamentos. En primer lugar, aunque las Reglas de Evidencia no aplicaban, el juzgador aplicó los

fundamentos de la Regla 901 de Evidencia para no permitir la admisión de prueba cuya autenticidad no pudo ser corroborada. No podemos obviar que el propósito principal de la autenticación es asegurar que en el juicio solo se considere evidencia genuina y confiable. Además, rechazamos la alegación que hace el Municipio sobre el hecho que el Sr. Rosario autenticó el documento durante su interrogatorio. Esto surge claramente de una lectura sosegada de la transcripción de la vista administrativa.

En segundo lugar, y de mayor peso, nos consta resaltar que el Municipio pudo haber autenticado el contenido del documento el testimonio de la directora de Recursos Humanos. Sin embargo, el Municipio no la sentó para autenticar el documento, aunque ella estaba disponible. La Comisionada de la CASP también tuvo la oportunidad de examinar el documento y determinó que este no contaba con logo oficial ni símbolo para acreditarlo como documento oficial, por lo que no podía ser autenticado al amparo de la Regla 902 de Evidencia.

Finalmente, el documento que intentó presentar el Municipio tenía fecha de 2021 cuando los hechos ocurrieron en el 2007-2008. Esto de por sí crea grandes dudas sobre la veracidad del contenido del documento. Aunque el abogado del Municipio haya alegado que el contenido del documento no sufrió cambios sustanciales entre la fecha de los hechos y la fecha de la vista, la realidad es que es imposible saberlo sin la presentación del documento original.

Para atender los planteamientos del Municipio, debemos resolver si la CASP actuó de manera razonable al ordenar la reinstalación del señor Rosario a su puesto de operador de equipo pesado. Tal encomienda, nos requiere pues examinar si la determinación de la agencia encuentra apoyo en la prueba documental y testifical admitida en la vista administrativa. Luego de un minucioso y detenido estudio del expediente y del derecho

aplicable, contestamos en la afirmativa y resolvemos que procede confirmar la decisión recurrida. Veamos.

Para alcanzar la decisión tomada, surge del detallado informe que preparó la Oficial Examinadora, que no le asiste la razón al Municipio al destituir al señor Rosario por las faltas imputadas, luego de evaluar cada uno de los documentos sometidos y admitidos en evidencia, así como, las declaraciones vertidas durante la vista. Tras dicho examen concluyó que el Municipio no demostró con prueba clara, robusta y convincente—como viene llamado a hacer ante un caso de destitución—que la falta probada era de aquellas que afectan el buen orden o pusiera en peligro la vida o seguridad de los empleados o del público en general. Sobre esto, destacó que conforme la Sección 4.6(a), Orden de la Prueba, del Reglamento Procesal de CASARH transferido a la CASP mediante el Plan de Reorganización 2-2010, Reglamento 7313 de la CASP, por tratarse de un caso de destitución, el peso de la prueba en el caso recaía en el Municipio.

A tales fines, decretó que, si bien la evidencia demostró que el señor Rosario incurrió en una falta al cambiar el cheque de nómina utilizando un vehículo oficial y requería una medida disciplinaria, por ser la primera, de acuerdo con las guías, correspondía una suspensión de empleo y sueldo por 10 días, no así la destitución. Toda vez, que quedó como un hecho probado que el señor Rosario contaba con el tiempo concedido, pero no podía realizar el cambio de cheque utilizando un vehículo oficial.

Por otro lado, en cuanto a los hechos imputados sobre insubordinación al supuestamente negarse ir al almacén, el señor Rosario testificó que cuando su supervisor se los requirió, estuvieron dispuestos a ir, pero para realizar las funciones de su puesto. Que debido a que posteriormente no les dieron más instrucciones, no fueron. En ese momento el representante legal del

Municipio le presentó al testigo la solicitud de acción disciplinaria del 1 de octubre de 2007 y la descripción del puesto del Conductor de Vehículo Pesado. El documento contenía lo siguiente:

*"colabora en la carga y descarga de materiales y equipo."*

El Municipio solicitó marcar como Exhibit 1 la descripción del puesto, sin embargo, mientras se evaluaba la admisibilidad de la prueba, la Oficial Examinadora lo denegó, toda vez que la descripción de puesto contenida había entrado en vigor en el año 2021 mientras que los hechos tuvieron lugar en el 2007.

En cuanto a estos hechos, el Municipio adujo que era la tercera ocasión en que el señor Rosario incurría en la misma conducta prohibida. Sin embargo, la CASP resolvió que la prueba desfilada demostró que el apelante estuvo disponible para realizar trabajos acordes al puesto que ocupaba. La CASP concluyó que el Municipio no pudo probar que las funciones que realizaría el señor Rosario estaban dentro de los deberes y obligaciones del puesto de Chofer de Vehículo Pesado que ocupaba. Adujo que el Municipio intentó presentar la descripción del puesto que cobró vigencia en el 2021 y no la vigente al momento de los hechos. Que tampoco presentó otra prueba que pudiera permitirles colegir que dicha función era propia del puesto que ocupaba o que fuere afín a este.

Además, la CASP evaluó la notificación del 19 de junio de 2007 contra el señor Rosario, por en el que se le imputó incurrir en la falta de conducta número 2 y 57 del Reglamento de Conducta y Medidas Disciplinarias, por patrón de ausencias, tardanzas y abandono del lugar de trabajo sin previa autorización. Además, de la notificación del 28 de agosto de 2007 sobre intención de imponerle una nueva medida disciplinaria que consistía en una suspensión de empleo y sueldo por cuarenta y cinco (45) días por reincidencia en la falta número 2 y 57, además imputándole falta de conducta número 55. En este caso, se le imputaba que continuaba con el

patrón de ausencias, tardanzas y abandono del lugar de trabajo, sin previa autorización.

La contención del Municipio era que al señor Rosario había que adjudicársele responsabilidad por incurrir en la norma de conducta número 57: *"Abandonar el área de trabajo para atender asuntos no oficiales sin previa autorización",* bajo el Reglamento de Conducta y Acciones Disciplinarias del Municipio de San Juan de 1999, para que fuera adjudicada como tercera ocasión en que el señor Rosario incurría en dicha conducta prohibida.

La CASP concluyó que no le asistía la razón, toda vez que, en la carta de intención de destitución, como en la carta final de destitución, no se le notificó al señor Rosario haber incurrido en falta a la norma de conducta número 57. A diferencia de las *Recomendaciones e Informe Final* que emitió la Oficial Examinadora del Municipio, la CASP concluyó que pretender justificar que procede la destitución del señor Rosario por el hecho de habérsele impuesto una medida disciplinaria previa por haber incurrido en la conducta prohibida número 57, bajo el reglamento anterior, y que fuera incumplida nuevamente al incurrir en la norma de conducta prohibida número 12, bajo el reglamento vigente, era improcedente. Abonó a su conclusión, que lo que se le notificó al señor Rosario fue la infracción a la norma de conducta número 12, sobre *"...[d]isponer de propiedad municipal y los servicios de un empleado para fines no públicos."* Por haber utilizado un vehículo oficial para realizar un cambio de cheque de su quincena y en horario laborable y que no se refirió a alguna norma de conducta prohibida relacionada a la asistencia.

Evaluada la prueba, la CASP pudo corroborar que la infracción a la norma de conducta número 57, por la cual el señor Rosario fue disciplinado anteriormente, fueron por hechos relacionados a que no cumplió con su jornada de trabajo, tardanzas

y por abandonar su lugar de trabajo, sin previa autorización de su supervisor. No acogieron la postura del Municipio en cuanto a que la infracción a la norma de conducta prohibida número 57, bajo el reglamento de 1999, y la norma de conducta prohibida número 12, bajo el reglamento vigente a los hechos, son iguales y lo que varió fue la numeración. Fundamentaron su decisión en el derecho constitucional que le asiste a todo empleado sobre un debido proceso de ley como salvaguarda de las privaciones de libertad o propiedad. Uno de sus requisitos es la notificación adecuada del proceso. Lo que permite al empleado público ponerlo al tanto de los cargos en su contra y de las consecuencias que estos podrían acarrear.

Concluyó la CASP que por lo único que se podía disciplinar al señor Rosario era por las infracciones a las normas de conducta específicas que le fueron notificadas en la carta de intención y no se podían variar. Hacer lo contrario constituiría una violación al debido proceso de ley. Examinado cuidadosamente el expediente en su totalidad, concluimos que los errores señalados por el Municipio no fueron cometidos, por lo que no estamos en posición de interferir con las conclusiones de la CASP. Procede, pues, que le concedamos total deferencia a la determinación recurrida y que se confirme el dictamen recurrido.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, confirmamos la Resolución recurrida, emitida por la Comisión Apelativa del Servicio Público.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones